Filed 10/10/25  County of Alameda Dept. of Child Support Services v. Vaughn CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF ALAMEDA DEPARTMENT OF CHILD SUPPORT SERVICES, Plaintiff, v. ERICKA DEMETRIA VAUGHN, Defendant and Respondent; ANTWAN CARMINER, Defendant and Appellant. | A171569 (Alameda County Super. Ct. No. HF20059828) |

Antwan Carminer and Ericka Vaughn are the parents of a now six-year-old son.  Carminer appeals from an order granting Vaughn sole legal and physical custody of their child.[1]  Carminer presents five issues on appeal that, in sum, contest the court's ability to hear the case along with the commissioner's specific rulings.  For the reasons discussed below, Carminer has forfeited each of his five claims, but even so, the record before us evinces no error.  Accordingly, we affirm.

---

[1] Carminer does not appeal the accompanying child support order, so we do not address it.

1

## BACKGROUND[2]

On April 17, 2020, the Alameda County Department of Child Support Services (DCSS) filed a summons and form complaint regarding parental obligations against Vaughn and Carminer because their common child had been receiving public assistance since October 29, 2019.  The complaint included an advisement to the parties that the case may be referred to a court commissioner and outlined how and when to object to the commissioner acting as a temporary judge.  Neither party appears to have filed any objection.[3]

On September 28, 2023, Vaughn filed an RFO on the issues of child custody, visitation, and support, seeking weekday custody because, "I have the child full time.  He has always lived with me.  I provide medical insurance, I enrolled him in school [and] take him every day as well as provide for all of his basic needs."[4]  Vaughn also represented that Carminer had withheld their child from her.

---

[2] Carminer's opening brief fails to include "a summary of the significant facts limited to matters in the record" as is required by California Rules of Court, rule 8.204(a)(2)(C), thus this background section is taken from the record on appeal, supplemented on our own motion where indicated below.

[3] The record on appeal does not include any filings between the 2020 complaint and the September 2023 "Request for Order" (RFO) that is the focus of this appeal.  As such, we presume the complaint was properly served (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 ["It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record"]) and the intervening proceedings, which are neither noticed nor referenced in appellant's opening brief, are not being contested. We therefore turn immediately to the RFO that is the subject of the appeal.

[4] Carminer failed to include in his appellate record the original RFO filed by Vaughn on September 28, 2023, thus this court separately secured said filing from the clerk of the Alameda County Superior Court, of which we take judicial notice.  (California Rules of Court, rule 8.155(a)(1) ["At any time, on motion of a party or its own motion, the reviewing court may order the

2

The hearing initially scheduled for November 2023 was rescheduled to January 2024[5] to enable Vaughn to perfect service of the RFO on Carminer. On January 17, Vaughn and Carminer appeared before the assigned court commissioner. The "Stipulation to Commissioner Advisement" was "read at the commencement of hearing and no objections [were] made." The court stated the reasons for the hearing, but, because there was still no proof of service on file and Carminer did "not waive his right to notice," the court continued the hearing until March to allow for proper service.

On March 6, Carminer filed an "Objection to Child Custody," seeking custody of the child and claiming he has "always been the caregiver," Vaughn failed to make child support payments, Vaughn is "unstable" and "has a drug problem," and Vaughn and his own mother withheld access to the child.

On March 20, both parties again appeared before the court commissioner and were sworn. The stipulation to commissioner advisement was again read at the commencement of the hearing, and "no objections [were] made." The court confirmed that proof of service by mail on Carminer had been filed on February 15.[6] But because Carminer continued to deny proper service, the person who purported to have served Carminer by mail was called to testify. The court accepted the testimony and found service to have been perfected but continued the matter to the next day for further hearing and issued a temporary custody order directing the supervised return

---

record augmented to include: [¶] (A) Any document filed or lodged in the case in superior court"]; Evid. Code, § 452, subd. (d) ["Judicial notice may be taken of the following matters . . . [¶] . . . [¶] (d) Records of (1) any court of this state . . ."].)

[5] All further dates are in 2024 unless otherwise specified.

[6] The court also confirmed Vaughn's withdrawal of a second RFO she had filed in January seeking Carminer's address for service.

3

of the child to Vaughn.[7]  The court also provided Carminer with a copy of the September 2023 RFO.

The following day, both parties returned for further hearing.  The stipulation to commissioner advisement was again read at the commencement of the hearing, and no objections were made.  However, after swearing the parties and confirming the child had been returned to Vaughn and had gone to school that morning, Carminer stated, "I would like to recuse you as my judge," and explained, "I feel like you're biased.  You heard -- you made a statement.  I wrote it in my notes.  You never let me speak and you made a ruling without all facts, and I would like to be heard before a judge."  Because Carminer "did not make the objection before the matter was heard yesterday, before the first hearing on the matter," the court determined the challenge was untimely and proceeded with the hearing.

But when the court began to discuss the custody and visitation recommendations set forth in the Alameda County Family Court Services report, Carminer declined to participate, stating:  "I made an objection before this case was even heard and you still made a ruling.  So with moving forward, I'm not gonna participate.  I don't have anything to say."  The trial court noted Carminer's "lack of respect to the court" and continued reviewing the report's recommendations with both parties.  Vaughn offered intermittent comment, while Carminer remained silent until near the end of the hearing when he complained that Vaughn had previously left the child with him and his mother for nine months.  He also requested custody of the child during

---

[7] Vaughn represented that on March 3, Carminer took the child from the grandparent caregiver (Carminer's mother) without notice or permission; since then, Carminer had not taken the child to school.

4

the week while Vaughn was at work and the child was otherwise watched by Carminer's mother.

Ultimately, the court awarded Vaughn temporary sole physical and legal custody of the child but permitted Carminer to continue with unsupervised visitation on alternating weekends. The court explained the basis for her temporary orders included Carminer's refusal to participate in the proceedings and his conduct and demeanor in court, Carminer's withholding of the child from Vaughn, and Vaughn's testimony and filings, which attached a lengthy text message sent by Carminer's mother in support of Vaughn. The court stated it had reviewed Carminer's objection filed March 6, but concluded, "Overall, the court makes a credibility finding that Father lacks credibility and finds Mother and her supporting documents more credible at this time."[8] The court then continued the matter to June for review.

In the interim, the court appointed "minor's counsel,"[9] who was not able to meet with the child before the June hearing, so the matter was continued

---

[8] In addition, the trial court ordered Carminer not to harass or intimidate Vaughn and her family and prohibited the taking, posting online, or otherwise distributing photographs or videos of Vaughn or Carminer's mother without their consent. This order was spurred by Vaughn's testimony that Carminer and his "friend" frequently took pictures and videos of Vaughn and Carminer's mother that they would text or post on social media as a form of harassment. Carminer represented that he had been taking the pictures, his wife was "the friend" and "had nothing to do with it." The court suggested that the order was "essentially bordering on . . . a possible restraining order, so that's something that you may or may not want to file. . . . I just want you to know could be covered in a restraining order and that restraining order could be more comprehensive."

[9] Family Code section 3150, subdivision (a) provides: "If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a

5

to July, despite both parties' requests for modifications of the temporary orders.

At the July hearing date, Carminer did not appear. When the court began the hearing one hour and 11 minutes after the scheduled time, minor's counsel represented that the weekend visitation was occurring as ordered and requested the temporary orders be adopted as permanent orders without change.

In her testimony, Vaughn informed the trial court that Carminer had violated the temporary order by posting on Facebook,[10] and he "indicated that he would not be showing up. And that he would not be getting his son."[11] Vaughn also stated that Carminer told her he was planning to move to Sacramento.

The court granted Vaughn sole legal and physical custody of the child and maintained the other temporary orders but permitted weekend visits to be cancelled if Carminer did not arrive within 15 minutes of the designated time for exchange.

Carminer timely appealed.

## DISCUSSION

Carminer articulates five grounds for his appeal: (1) the trial court erred in granting custody to Vaughn; (2) the trial court violated Carminer's

---

custody or visitation proceeding . . . ." (See also Cal. Rules of Court, rule 5.240.)

[10] The specifics of what Carminer posted are not included in the record on appeal.

[11] According to minor's counsel, between the March and July court dates, Carminer had filed a request for a restraining order against his mother that was dismissed when he also failed to appear at that hearing date.

6

due process rights because he was not properly served with the RFO; (3) the trial court's failure to rule on his motion to augment the record constituted prejudicial error; (4) the trial court erred in denying his objection to the commissioner; and (5) the trial court exhibited bias against him. But Carminer's claims have all been forfeited due to inadequate briefing, and, even considering each in turn, they are independently without merit.

## I. *Custody Order*

To start, Carminer cites *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*), for the principle that "custody should favor the parent promoting frequent contact and stability." He argues the trial court's custody orders were not in "the best interest of the child" in violation of Family Code section 3040, subdivision (a)[12] because Vaughn "withheld the child, lacked consistent housing, and was absent for nine months." Carminer asserts that the trial court disregarded this evidence.

But these arguments fail in both form and substance. On appeal, a statement of facts must state critical facts and evidence accurately and fairly, and issues and arguments can be waived by material omission. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.) "[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 (*Hodjat*).) Because "[m]ere suggestions of error without supporting argument or authority other than general abstract

---

[12] Family Code section 3040, subdivision (a) sets forth the order of preference for custody determinations "according to the best interest of the child" and, in making an order granting custody to either parent, requires "the court shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent. . . ." (*Id.*, subd. (a)(1).)

principles do not properly present grounds for appellate review" (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078), we may treat these contentions as waived. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*).) An appellant must also articulate a standard of review. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [failing "to articulate the standard of review on appeal [is] in and of itself a potentially fatal omission"].) Carminer's status as a self-represented litigant does not relieve him of these obligations. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 ["as is the case with attorneys, pro. per. litigants must follow correct rules of procedure"].) Despite being afforded three opportunities to correct his opening brief, Carminer satisfies none of these requirements.

Carminer's seven-sentence statement of facts is woefully inadequate and unrepresentative. He focuses only on excerpts of the March 21 hearing that favor his position and omits reference to his taking and withholding of the child, his noncompliance with court orders, his disruptive behavior in court, and his failure to appear for the final hearing in July. (Cal. Rules of Court, rule 8.204(a)(2)(C).) This incomplete and misleading factual summary without sufficient citation to the record is, in itself, grounds for affirmance. (*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1 ["It is not the task of the reviewing court to search the record for evidence that supports the party's statement; it is for the party to cite the court to those references. Upon the party's failure to do so, the appellate court need not consider or may disregard the matter"].) Moreover, Carminer's citation to the single case of *LaMusga* is unhelpful because he fails to explain how *LaMusga* applies to his claim, nor does he articulate the applicable standard of review. Accordingly, this claim is forfeited.

8

Even setting aside these fatal flaws, the record supports the trial court's decision. We employ the "abuse of discretion standard of review" in considering permanent custody orders. (*LaMusga*, *supra*, 32 Cal.4th at pp. 1086–1088.) In doing so, a lower court's rulings are presumed correct, and the appellant bears the burden of affirmatively showing error. (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125.) Carminer's thin and one-sided briefing does not do so.

Instead, the evidence demonstrates the trial court's custody determination was in the best interest of the child and was not an abuse of discretion. (*LaMusga*, *supra*, 32 Cal.4th at pp. 1086–1088.) The trial court specifically found that Carminer "failed to act in the best interests of the child," where he removed the child from his caregiver without notice or permission, withheld the child from his mother and grandmother, failed to take the child to school, and failed to fully and appropriately participate in the court proceedings—even failing to attend the final custody determination he now challenges on appeal. Assuming all inferences in favor of the court's order, we conclude the trial court did not abuse its discretion in determining that the best interests of the child required that Vaughn be granted sole legal and physical custody, with visitation rights to Carminer. (*Universal Home Improvement, Inc. v. Robertson*, *supra*, 51 Cal.App.5th at p. 125.)

## II. *Service of the RFO*

Carminer next contends that the court violated his due process rights in proceeding with the custody hearing even though he was never properly served with the RFO. But other than generally claiming he was deprived of "meaningful notice and opportunity to respond," Carminer again cites neither facts nor authority in support of his position. His due process claim is

9

therefore forfeited.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Hodjat*, *supra*, 211 Cal.App.4th at p. 10.)

Even if not forfeited, Carminer's claim has no merit.  The court did not proceed with the originally scheduled November 2023 hearing because Carminer had not been served.  Even though Carminer appeared at the January 2024 hearing, the court again continued the matter because no proof of service had been filed and Carminer continued to contest service.  On February 15, Vaughn filed proof of mail service of the RFO, and on March 6, Carminer filed an opposition.  Carminer then appeared at the rescheduled March 20 hearing but again contested service, necessitating related testimony, which the court considered before determining service had properly been effectuated.  Yet even after that finding, the court provided Carminer with a new copy of the RFO and continued the hearing to allow him additional time for review.  The following day, Carminer did not assert any further objection, nor did he request additional time to prepare.  As such, Carminer has not shown how he was "deprived of meaningful notice and opportunity to respond."

### III.  *Failure to Augment Record*

Carminer's appellate claim for failure to augment the record is indecipherable and therefore fails.  (*Falcone*, *supra*, 164 Cal.App.4th at p. 830 ["The absence of cogent legal argument . . . allows this court to treat the contentions as waived"].)  In his opening brief, Carminer represents that he "requested to augment the record with documents evidencing care, daycare notices, and law enforcement contact (CT 98).  The failure to include this material prejudices meaningful appellate review (*Carlsson*, supra)."  But the cited "CT 98" is not a motion to augment the record or related ruling by the trial court; it is Carminer's notice of appeal.

Our review of the appellate record shows that Carminer filed in April and June 2025 before this court—not the trial court—two motions to augment the record that were granted at least in part. Then, on June 20, 2025, he filed before us a request for judicial notice that represents, "That on or about October 2, 2024, Appellant filed a timely Notice of Designation and Motion to Augment the Record with the Alameda County Superior Court under California Rules of Court, Rule 8.155." But we denied this request for judicial notice explaining, "Both motions to augment the record on appeal were filed and directed to this court, not the superior court who does not have jurisdiction over this appeal, and both motions were granted. The second motion was granted to augment the record with documents attached to the motion. The first motion was granted, and the records were provided by the superior court and were filed." Despite our granting of Carminer's two motions to augment the record on appeal, the record remains void of any motion to augment before the trial court or any related ruling that we may review.

" 'The appellate court is not required to search the record on its own seeking error.' [Citation.] Thus, '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.' " (*Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246.) Because Carminer failed to provide accurate citation to the record, and we see nothing in the record to support Carminer's claim, this contention is forfeited. (*Falcone, supra*, 164 Cal.App.4th at p. 830.)

### IV. *Objection to Commissioner*

Carminer next argues that he timely objected under Family Code section 4251 to the commissioner conducting his hearing. In support, but again without explanation, Carminer cites only one case: *In re Marriage of*

*Ziegler* (2017) 8 Cal.App.5th 1029. But this citation does not exist. The case located at 8 Cal.App.5th 1012 (not 1029) is the unrelated civil case of *Golden Day Schools, Inc. v. Office of Administrative Hearings* (2017), which concerns a petition for writ of administrative mandamus. A case titled *In re Marriage of Ziegler* from 1989 can be found at 207 Cal.App.3d 788, but again it is irrelevant as it concerns discretionary orders of payments on a survivor benefit plan. Consequently, Carminer's challenge to the commissioner hearing the case is forfeited. (*Hodjat*, *supra*, 211 Cal.App.4th at p. 10 ["an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case"].)

Even considering the merits of Carminer's legally unsupported argument, we see no error. Family Code section 4251 provides: "The commissioner shall act as a temporary judge unless an objection is made by the local child support agency or any other party. . . ."[13] (Fam. Code, § 4251, subd. (b); see also Code Civ. Proc., § 259, subds. (d), (f).) Without a timely objection, there is "an implied waiver of the required stipulation that the matter be heard by the commissioner sitting as a temporary judge." (*In re Brittany K.* (2002) 96 Cal.App.4th 805, 813.)

---

[13] "If a party objects to the commissioner acting as a temporary judge, the commissioner is still empowered to hear the matter, make findings of fact and issue a recommended order. (§ 4251, subd. (c).) If there is no objection to the recommended order within 10 court days, a judge shall ratify it as the order of the court. If a timely objection is made to the recommended order, then the party is entitled to a hearing de novo before a judge. (*Ibid*.) As a result of the statutory scheme, a party must object twice to earn a trial de novo before a judge—first, to the commissioner acting as a temporary judge and, second, to the commissioner's recommendation." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1035.)

12

The original complaint included an advisal as to how and when to object to a commissioner acting as a temporary judge, yet no objections appear to have been made. Further, the minute orders for both the March 20 and 21 hearings state: "Stipulation to Commissioner Advisement is read at the commencement of hearing and no objections are made." Carminer's only objection appears on the record on March 21, after the second hearing had commenced. In response to Carminer's objection and claim of court bias, the court explained: "If you had heard the advisement this morning, which you were present for, and the advisement yesterday, which you were present for, if you object to having your matter heard before a commissioner, that objection needs to be made before the first hearing on the matter." Because Carminer was advised by the court "prior to the commencement of the hearing" at least twice in person and once on paper that the matter would be heard by a commissioner to whom he could also object, and because Carminer failed to object before the March 20 hearing substantively began, his objection was untimely. (*See Kern County Dept. of Child Support Services v. Camacho*, *supra*, 209 Cal.App.4th at p. 1037 ["evidence was sufficient to show appellant's actual knowledge of his right to object to a commissioner hearing his motion, yet he failed to object and in fact allowed the commissioner to hear and decide the support arrearages"].)

## V. *Trial Court Bias*

Carminer's final claim on appeal is one of general bias because the court "repeatedly cut off appellant's testimony . . . , disregarded his objections, and unilaterally deemed him not credible despite substantial evidence of care." In support of his argument, Carminer includes only a global cite to the reporter's transcript of proceedings for the March 21 hearing, which is insufficient to provide necessary citations in support of his

13

argument. (*Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246.) Again, Carminer fails to explain how his contentions are supported by legal authority or factual basis that demonstrates bias; thus, they are forfeited. (*Falcone, supra*, 164 Cal.App.4th at p. 830.)

Even if not forfeited, Carminer's claim of bias lacks merit. The mere fact that the commissioner ruled against Carminer in granting Vaughn's custody request "does not indicate an appearance of bias, much less demonstrate actual bias." (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 [the "mere fact that the trial court issued rulings adverse to [appellant] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias"]; see also *People v. Ng* (2022) 13 Cal.5th 448, 572, quoting *People v. Guerra* (2006) 37 Cal.4th 1067, 1112 [" '[A] trial court's numerous rulings against a party—even when erroneous— do not establish a charge of judicial bias, especially when they are subject to review' "].) Only an " 'exceptional case presenting extreme facts' " can demonstrate actual bias on the part of the judicial officer. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 219, 222 [to demonstrate a due process violation of the right to an impartial adjudicator, an appellant must present specific evidence that demonstrates actual bias or a constitutionally acceptable risk of actual bias].)

Moreover, the court's direction of testimony does not demonstrate bias because a court is obligated to control its courtroom, including the manner of the presentation of evidence. (Code Civ. Proc., § 128, subd. (a)(3) [courts have the power to "provide for the orderly conduct of proceedings before it"]; Evid. Code, § 765, subd. (a) ["The court shall exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as

distinct, and as effective for the ascertainment of the truth"]; Cal. Stds. of Jud. Admin., § 2.20 ["The trial judge has the responsibility to manage the trial proceedings"].)

Here, the trial court appears to have made neither numerous nor erroneous rulings against Carminer and any curtailment of his testimony appears to be the appropriate management of a court hearing. In fact, rather than demonstrating bias against Carminer, the record is replete with examples of actions the court took in his favor. For example, the court continued the hearing on the RFO three times to ensure that Carminer had both appropriate notice and the opportunity to be heard, even providing Carminer with a copy of the RFO *after* she had determined he had been appropriately served and he had filed an opposition. After Carminer declined to participate in the March 21 hearing, the court continued to ask his perspective, resulting in Carminer's testimony as to why he felt he deserved week-day custody of the child. Finally, Carminer's contention that the court "unilaterally deemed him not credible" is contradicted by the record demonstrating Carminer's uncooperative conduct and the court's reasoning for its orders. As such, there is no error.

## DISPOSITION

The judgment is affirmed. Because Vaughn did not appear on appeal, we do not award costs. (Cal. Rules of Court, rule 8.278(a)(5).)

15

DESAUTELS, J.

We concur:

STEWART, P. J.

RICHMAN, J.

*County of Alameda Department of Child Support Services v. Vaughn and Carminer* (A171569)